## LOUISIANA, A. & M. R. CO. v. BOARD OF LEVEE COM'RS OF TENSAS BASIN LEVEE DIST.

(Circuit Court of Appeals, Fifth Circuit. April 26, 1898.)

No. 650.

1. APPEAL AND ERROR—SUFFICIENCY OF ASSIGNMENTS OF ERROR.

Assignments of error that in substance amount to only that the court erred in deciding the case for the opposite party are not specific enough to demand consideration.

2. LEVEES—POWERS AND DUTIES OF BOARDS.

The act of July 3, 1886 (Sess. Laws, p. 96), of the Louisiana legislature, creating the Tensas Basin Levee Board, authorizing it to assess taxes, collect and receive funds, and hold and administer the same, and granting to it large tracts of public lands to be expended by it discreetly for the purpose of carrying out the purposes of the act, created not a merely ministerial and executory functionary, but a full-fledged municipal corporation, with large discretion as a fiduciary agent, and with full power to sue in regard to the trust imposed.

3. SAME—POWER OF BOARDS TO CONTRACT.

The constitution of Louisiana (article 214) authorizes the legislature to create levee districts, the boards of which shall have supervision of the levees in said districts. Article 216 gives power with the concurrence of the adjacent state or states to create levee districts composed of territory partly in the state and partly in adjacent states. Act No. 59, 1886, § 17, provides that the Tensas Basin District, in Louisiana, shall have the right to join with any levee district embracing the counties of Chicot and Desha, in Arkansas, for mutual protection. Held, that a contract by the Tensas Basin District for the building of a levee in Chicot county, Ark., in opposition to the levee authorities of that state, was ultra vires and void.

4. SAME—CONTRACT BY RAILROAD FOR EMBANKMENT.

Defendant, an Arkansas railroad company, contracted with plaintiff, a Louisiana levee district, to build a portion of its railroad in Arkansas in the form of a levee embankment, of a certain height, which should serve the purpose of a levee as well as a railroad bed. The statutes of Arkansas forbid the building of railroad embankments which will interfere with the natural flow of the water, and the levee authorities in the district where the road was proposed to be built opposed it by legislation. Held that, the contract being impossible of performance, it should be rescinded.

5. SAME—WHAT ARE PUBLIC IMPROVEMENTS.

Acts La. 1888, No. 77, § 2, gave the Tensas Basin Levee District all the state lands within the district to be used for the purpose of building a system of levees or other public improvement for the purpose of protecting the district from disastrous floods, and authorized the board to dispose of the lands in such manner as it should deem proper. Const. La. art. 56, prohibits the granting of the property of the state to private enterprise. The board contracted with a railway company for the building of a portion of its road in the form of a levee embankment, which the state engineer reported would be of great value to the district. Held, that the railway was, to the extent it would protect the district, a "public improvement," contemplated by the statute, though owned at its completion by private persons, and used for another purpose besides being a mere levee.

6. CONTRACTS—TIME OF PERFORMANCE—RESCISSION.

A railroad company agreed to perform certain work by a stipulated time unless it is "by reason of the elements, litigations, strikes, financial panics, epidemics, or any other cause unforeseen or beyond the control of said railroad company, its successors or assigns, hindered or delayed or otherwise prevented from properly prosecuting said work. In such case, time not being the essence of this contract, the date herein fixed for completion * * * will not be adhered to, but credit for the time so lost shall be given and allowed to said railroad company, its successors or assigns, and the time so lost shall be added to that herein required for

the completion of" this contract. *Held* that, whether or not the company could ever be defaulted under the contract, Rev. Civ. Code La. art. 2765, providing that "the proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require," gave the contracting parties the right to declare the contract at an end at any time before its completion.

Appeal from the Circuit Court of the United States for the Western District of Louisiana.

The following statement is reprinted from appellee's brief:

The appellee, the Board of Levee Commissioners of the Tensas Basin Levee District (whom we will hereafter designate as the "Levee Board"), brought suit in the district court of Richland parish, La., against the Louisiana, Arkansas & Missouri Railroad Company (which we will hereafter designate as the "Railroad Company"), to annul certain contracts and conveyances made by the Levee Board to the Railroad Company, of some 700,000 acres of land granted to the Levee Board by the state of Louisiana. The suit was removed for trial into the United States circuit court for the Western district of Louisiana; and, from an adverse judgment, restoring the lands in controversy to the Levee Board, the Railroad Company has appealed. The appellant asserts title to the lands in controversy by virtue of the following contracts between it and the Levee Board, which, for the convenience of the court, we print in full:

### First Agreement.

"Dy. Sheriff of Richland Parish, La.

### "Exhibit A. Contract.

"These articles of agreement, made and entered into this third day of May, A. D. 1889, at Rayville, in the state of Louisiana, by and between the Board of Levee Commissioners of the Tensas Levee District and the Louisiana, Arkansas and Missouri Railroad Company, of Arkansas, witnesseth: That for and in consideration of the payments hereinafter provided for, and agreed to be made by the said Board of Levee Commissioners of the Tensas Basin Levee District, the said the Louisiana, Arkansas and Missouri Railroad Company agrees and binds itself to construct and complete above overflow, in a thorough and workmanlike manner, under the supervision and direction of the Board of State Engineers of the State of Louisiana, and thereafter to maintain, all that certain embankment or portion of its roadbed proposed by said Railroad Company to be located in the state of Arkansas, between a point where the line of railroad projected by said company shall cross Crooked Bayou, in section ——, township —— south, range —— west, and a point on the northern terminus of what is known as the 'Bayou Macon Ridge,' in section ——, township —— south, ——, range —— west. Said embankment or roadbed, when constructed, may be forever afterwards used as its roadbed by the said Louisiana, Arkansas and Missouri Railroad Company, its successors and assigns. The course of said embankment is to be in a general northerly and southerly direction on the west of Bayou Macon. Said embankment shall be constructed according to either one of the two following specifications, except where the same, or either of them, may hereafter, upon the request of said Railroad Company, be modified by the said board of state engineers, that is to say:

### "Specification 1.

"Said embankment shall have a width on top not less than eight (8) feet, and side slopes not steeper than three feet horizontal to one foot vertical It shall be built and maintained up to a height of not less than three and one-half (3½) feet above the elevation of the highest known water marks in the Mississippi river, in the same latitude. It shall be constructed of earth, free from all trash, brush, or perishable matter. All stumps, logs, roots, stalks, weeds, grass, trash, and perishable matter of every kind shall be removed. A muck ditch shall be cut along the center line four (4) feet wide on

top, two (2) feet wide on the bottom, and three feet deep. All trees coming within the base of the embankment shall be cut to the surface of the ground, and all decayed roots and stumps shall be grubbed out. All buried logs, brick walls, and other material considered unsuitable shall be removed. A berme of not less than fifteen (15) feet in width must be left undisturbed on the east side, and of not less than fifty (50) feet on the west side of the line.

### "Or, Specification 11.

"Said embankment shall have a width on top of not less than eight (8) feet, and side slopes not steeper than two and one-half (2½) feet horizontal, to one (1) foot vertical. It shall be built and maintained up to a height not less than two and one-half (2½) feet above the elevation of the highest known water marks in the Mississippi river in the same latitude. Whenever said embankment is over fifteen (15) feet high, there shall be added thereto on the west side thereof an 'Extra Base' or 'Banquette,' twenty (20) feet wide, level on top, and extending up to within fifteen (15) feet of the top of the main embankment, as shown in the following diagram:

"Said embankment shall be constructed of earth, free from all trash, brush, or perishable matter. All stumps, logs, roots, stalks, weeds, grass, trash, and perishable matter of every kind shall be removed. A muck ditch shall be cut along the entire line, four (4) feet wide on top, two (2) feet wide on the bottom, and three (3) feet deep. All trees coming within the base of the embankment shall be cut to the surface of the ground, and all decayed roots and stumps shall be grubbed out. All buried logs, brick walls, and other material considered unsuitable shall be removed. A berme of not less than fifteen (15) feet in width shall be left undisturbed on the east side, and of not less than fifty (50) feet on the west side of the line.

"In consideration of the covenants and agreements hereinabove contained, and made by the Louisiana, Arkansas and Missouri Railroad Company, the Board of Levee Commissioners of the Tensas Basin Levee District agrees and binds itself and its successors to pay or cause to be paid to the Louisiana, Arkansas and Missouri Railroad Company, its successors or assigns, for the construction of said embankment and the annual maintenance thereof, as follows, viz.: First. Upon the completion of said embankment, fifty thousand ($50,000) dollars in cash, or in the bonds the said Board of Levee Commissioners is or may be authorized to issue. Second. A five (5) mill tax in cash, annually, upon all taxable property subject to taxation for levee purposes, that now is, as well as that which may hereafter be, embraced within the limits of the Tensas Basin Levee District, for a period of twenty years from the first day of January, A. D. 1891; said tax shall be paid annually. The first installment shall be paid on the first day of May in each and every year thereafter, until the completion of said time of twenty years. Third. A one and one-half cents per acre tax, in cash annually, upon all lands subject to taxation for levee purposes, that are now, as well as those that may hereafter be, embraced within the limits of the Tensas Basin Levee District, for a period of ten (10) years from the first day of January A. D. 1891. Said tax shall be paid annually, at the same time and in the same manner as the five-mill tax hereinbefore provided for is to be paid. Fourth. Ninety per centum of the gross proceeds derived from the sales of land located within the limits of the Tensas Basin Levee District, if any such sales have been made by the state of Louisiana, from and after the sixth day of January,

A. D. 1888, and to which proceeds the said Board of Levee Commissioners became and were entitled by virtue of Act No. 59 of the Laws of 1886: also ninety per centum of the gross proceeds derived from the sales of any and all lands now belonging, or that may hereafter belong, to, and become the property of, said Board of Levee Commissioners by virtue of Act No. 77 of the Laws of 1888, and now, as well as those which may hereafter be, embraced within the limits of the Tensas Basin Levee District, for a period of ten years next ensuing from and after the date hereof, whether those are lands originally granted by congress to the state of Louisiana, or whether said lands be lands heretofore or hereafter forfeited to, or bought in by or for, or sold to, the state at tax sales, for nonpayment of taxes: provided, however, and it is expressly understood and agreed, that no payment shall be asked for, nor made under this provision, until the work herein contemplated and agreed to be constructed shall be completed. The first payment shall be for all lands sold prior to such completion, and after the sixth day of January, A. D. 1888. Thereafter payments shall be made on the first days of November and May, in each and every year until the full end of said period of ten years from the date hereof, for all lands sold during the six months immediately preceding. And the state of Louisiana, having, by legislative enactment (Act No. 77, Laws 1888), given, granted, bargained, donated, conveyed, and delivered unto the Board of Levee Commissioners of the Tensas Basin Levee District all the lands which at the date of the passage of said act belonged, or that might hereafter belong, to said state of Louisiana, and embraced within the limits of the Tensas Basin Levee District, as said limits were in and by said Act No. 77 of the Laws of 1888 reconstituted and enlarged, and therein made provision for the conveyance of said lands to said Board of Levee Commissioners, by proper instruments of conveyance, and further provided that, upon said deeds being properly recorded, the title to said lands, with the possession thereof, should vest absolutely in said Board of Levee Commissioners, its successors and grantees, with full power and authority to said board to sell, mortgage, pledge, or otherwise dispose of said lands, in such manner and at such times and for such prices as to said board shall seem proper. The Louisiana, Arkansas and Missouri Railroad Company, its successors and assigns, may, at any time after the completion of said work, in lieu of receiving said ninety per centum of said cash proceeds, select at its option, in such localities and in such quantities as it or they may from time to time desire, ninety per centum of the lands that are now, as well as those which may hereafter be, embraced within the limits of the Tensas Basin Levee District, and be so conveyed to said Board of Levee Commissioners. And, immediately after each selection of aforesaid said lands so selected, with the immediate possession thereof, shall be conveyed to said Railroad Company, its successors or assigns, by said Board of Levee Commissioners, or its successors, by proper instruments of conveyance.

"It is further stipulated and agreed that said Railroad Company shall, from and after the execution and delivery of this contract, be permitted and have the right to exercise said option, which, however, shall take effect only from and after the completion of the work herein provided for. But, from and after the exercise of said option, no lands shall be sold by said Board of Levee Commissioners until after the selection of the ninety per centum to which said company may be entitled, without the written consent of said company be first obtained. Active operations on the work herein contemplated and agreed to be performed by said Railroad Company shall be commenced within ninety days next ensuing after the date hereof; and the whole of said embankment shall be fully completed on or before the first day of October, A. D. 1890, unless said Railroad Company, its successors or assigns, are, by reason of the elements, litigations, strikes, financial panics, epidemics, or any other causes unforeseen or beyond the control of said Railroad Company, its successors or assigns, hindered and delayed or otherwise prevented from properly prosecuting said work. In such case, time not being the essence of this contract, the date herein fixed for completion will not be adhered to, but credit for the time so lost shall be given and allowed to said Railroad Company, its successors or assigns; and the time so lost shall be added to that herein required for the completion of this contract. It is

understood and agreed that no payment shall be asked for nor made under any of the several provisions hereinabove contained until the work herein contemplated and agreed to be constructed shall be completed.

"Said Board of Levee Commissioners further agree to give, grant, bargain, sell, and convey unto said Railroad Company, its successors or assigns, a certain piece or strip of land contained and included between two parallel lines, two hundred (200) feet apart, situated one·on each side of the center line of the roadbed of said Railroad Company as the same has been, now is, or may hereafter be, selected and located by said Railroad Company, its successors and assigns, through, across, and over any of the·lands that now do or may hereafter belong to said Board of Levee Commissioners. Together with the right to take from lands outside of said limits so much and such parts thereof as may by said Railroad Company, its successors or assigns, be deemed necessary for its purposes or for the construction of the embankment herein provided for. Said Railroad Company, its successors or assigns, may, by their agents or otherwise, enter at once into and upon said lands, and construct their road. It is further understood and agreed that the covenants, conditions, and provisions herein contained shall in all things be valid, subsisting, and binding upon the successors and assigns of the respective parties hereto.

"In witness whereof, the said Board of Levee Commissioners of the Tensas Basin Levee District hath caused its official seal to be hereunto affixed, and ·the same to be attested by its secretary, and these presents to be executed in duplicate, and subscribed by its president. And the said the Louisiana, Arkansas and Missouri Railroad Company hath caused its seal to be hereunto affixed, and these presents to be executed in duplicate, and subscribed by its president, the day and year first hereinabove mentioned.

"In presence of W. G. Wright & Wiley P. Mangham, competent witnesses.

　　　"The Board of Levee Commissioners of the Tensas Basin Levee District,
"[Seal.]　　　　　　　　　　　　　　　　　　　By H. P. Wells, President.
"Attest:
　　　"Stephen Faulk, Secretary.
　　　"The Louisiana, Arkansas and Missouri Railroad Company,
"[Seal.]　　　　　　　　　　　　　　　　　By Harlow M. Hoyt, President.
"Witnesses:
　　　"W. G. Wright,
　　　"Wiley P. Mangham."

### Second Agreement.
"Exhibit B.
"Articles of Agreement.

"These articles of agreement, made and entered into this twenty-fifth day of July, A. D. 1890, at Rayville, in the state of Louisiana, by and between the Board of Levee Commissioners of the Tensas Basin Levee District and the Louisiana, Arkansas and Missouri Railroad Company, of Arkansas, witnesseth:

"That whereas, an agreement was heretofore entered into by and between the parties hereto, bearing date the 3d day of May, 1889, providing for the construction by the Louisiana, Arkansas and Missouri Railroad Company of a certain portion of its embankment or roadbed in the state of Arkansas, according to certain specifications in said ·contract set forth, and providing further for certain payments to be made therefor by the Board of Levee Commissioners of the Tensas Basin Levee District; and whereas, said Railroad Company, having been so requested, has agreed to relinquish and forever discharge said Board of Levee Commissioners of the Tensas Basin Levee District from making a part of the payments in and by said contract of May 3d, 1889, agreed to be made, and has also agreed to do and perform certain other acts as hereinafter set forth, but only in consideration of said Board· of Levee Commissioners changing the date of completion of said embankment from October 1st, 1890, to October 1st, 1891, and conveying and transferring the lands now owned by said Board of Levee Commissioners to said Railroad Company upon the execution and delivery of this contract: Now, therefore, in consideration of the premises, and of the sum of one dollar each to the other in hand paid on or before the ensealing and delivering of

these presents, the receipt whereof each from the other is here acknowledged, said parties hereto do mutually covenant, promise, and agree as follows, viz.: First. The fifty thousand dollars in cash or bonds, and the one and one-half cents per acre tax in and by said contract of May 3rd, 1889, agreed to be paid to said Railroad Company, is hereby relinquished by said Railroad Company, and the Board of Levee Commissioners of the Tensas Basin Levee District is forever discharged from the payment of the same, or either thereof. Second. The Louisiana, Arkansas and Missouri Railroad Company agrees to execute and deliver to said Board of Levee Commissioners its corporate bond in the sum of one hundred thousand dollars, conditioned to keep the embankment in and by said contract of May 3rd, 1889, agreed to be constructed, in repair during the corporate existence of said the Louisiana, Arkansas and Missouri Railroad Company, but no longer, and to renew said bond whenever, during said corporate existence, a surety thereon shall die or become insolvent. Third. The Louisiana, Arkansas and Missouri Railroad Company covenants, promises, and agrees to begin work, or cause work to be commenced, at Delhi, Louisiana, with a good force of hands, within ninety days after work is resumed upon the embankment, in said contract of May 3rd, 1889, mentioned, and to continue actively and earnestly at work until a railroad is completed and in operation, northward from Delhi to and as far as the northern terminus of the Bayou Macon Hills, at the Boeuff Cut-Off, in Chicot county, Arkansas. And said Railroad Company further covenants, promises, and agrees so [to] complete said embankment in said contract agreed to be constructed, and entire line of railroad from Helleys, Arkansas, to Delhi, Louisiana, on or about the first day of October, A. D. 1891, unless it, its successors or assigns, are by reason of the elements, litigations, strikes, financial panics, epidemics, or any other cause unforeseen or beyond the control of said Railroad Company, its successors or assigns, hindered or delayed or otherwise prevented from properly prosecuting said work. In such case, time not being the essence of this contract, it is particularly understood and agreed that the date herein fixed for the completion of said embankment and said railroad will not be adhered to, but credit for the time so lost shall be given and allowed to said Railroad Company, its successors or assigns; and the time so lost shall be added to that herein required for the completion of said contract of May 3rd, 1889, and the fulfillment of this contract. Fourth. The Louisiana, Arkansas and Missouri Railroad Company further covenants, promises, and agrees, not only to keep said embankment across said Boeuff Cut-Off, in Chicot county, Arkansas, in repair, but also to place thereon a standard-gauge railroad, and to maintain and operate the said railroad after it is completed.

"The Board of Levee Commissioners of the Tensas Basin Levee District, on its behalf, agrees for itself and its successors as follows: First. The date in the contract of May 3rd, 1889, fixed for the completion of said embankment in Chicot county, Arkansas, viz. the first day of October, 1890, shall be, and is hereby, changed and extended to October 1st, A. D. 1891, to the same intent and with the like effect as though the date originally designated in said contract had been October 1st, A. D. 1891, instead of October 1st, A. D. 1890. Said change of date, however, shall not abrogate nor in any manner affect any of the provisions in said contract contained, relative to the various contingencies and conditions therein provided for allowance of additional time, but the same shall remain and continue as in said contract set forth. Second. Immediately upon the execution and delivery of this contract, said Board of Levee Commissioners of the Tensas Basin Levee District shall convey, by proper instruments of conveyance, executed by its president in behalf of and in the name of said board, to the said Louisiana, Arkansas and Missouri Railroad Company, its successors or assigns, all of the land now belonging to said Board of Levee Commissioners of the Tensas Basin Levee District. Said instruments of conveyance shall respectively contain the following provisions, viz.: 'In the event of the failure of the said the Louisiana, Arkansas and Missouri Railroad Company, its successors or assigns, to construct that certain portion of its roadbed or embankment in Chicot county, Arkansas, described in a certain contract made by and between the parties hereto, bearing date the 3rd day of May, 1889, according to either one or two speci-

fications prescribed in the said contract, which said contract is of record in the office of the recorder of the parish in which the said lands are situated, within the periods and additional times allowed to said Railroad Company, and upon the judicial determination of such failure, then and in such cases said the Louisiana, Arkansas and Missouri Railroad Company covenants, promises, and agrees to reconvey and return the lands herein conveyed to said Board of Levee Commissioners of the Tensas Basin Levee District.' 'The transfer and conveyance of said lands is made under and in pursuance of the authority given to said board in and by the laws of the state of Louisiana, and as a means and mode of making part payment for the construction of an embankment according to certain specifications prescribed by the Board of State Engineers of the State of Louisiana, and fully set forth in said contract of May 3rd, 1889, which said embankment, when completed, said Board of State Engineers have certified will aid in protecting the Tensas Basin Levee District from overflow.' It is mutually understood and agreed, and with the exception of the change and modifications herein made or provided for, the contract of May 3rd, 1889, between the parties hereto, shall remain unchanged and in full force and effect.

"In witness whereof, the said parties have caused their respective corporate seals to be hereunto affixed, and these presents to be subscribed by their respective presidents, the day and year hereinabove first mentioned.

"In presence of William J. Curtis and Thomas C. Wellman, competent witnesses.

"The Board of Levee Commissioners of the Tensas Basin Levee District,
"[Seal.]       H. P. Wells, President.

"Attest:

"Stephen Faulk, Secretary.

"The Louisiana, Arkansas and Missouri Railroad Company,
"[Seal.]       Harlow M. Hoyt, President.

"Witnesses:

"W. J. Curtis as to H. P. W.
"T. C. Wellman as to H. M. H."

### Third Agreement.

"Exhibit C.

"Articles of Agreement.

"These articles of agreement, made and entered into this, the twelfth day of October, A. D. 1891, at Rayville, in the state of Louisiana, by and between the Board of Levee Commissioners and the Louisiana, Arkansas and Missouri Railroad of Arkansas, witnesseth: That for and in consideration of the sum of one dollar each to the other in hand paid, on or before the ensealing and delivery of these presents, the receipt whereof each from the other is hereby acknowledged, said parties hereto do mutually covenant, promise, and agree as follows, viz.: First. The several dates named in said contracts of May 3rd, 1889, and July 25th, 1890, for the completion of said contracts, namely, October 1st, 1890, and October 1st, 1891, shall be, and they are hereby, changed and extended to December 31st, 1893, to the same intent and with the like effect as though said date, December 31st, 1893, had been the date originally designated in said contracts, instead of October 1st, 1890. And, second. The period in said contracts limited for the levy and payment of the five-mill tax shall be, and it is hereby, changed to and held to mean a period of twenty years from the first day of January, in the year following that year in which the work in said contracts contemplated shall be completed, instead of twenty years from the first day of January, A. D. 1891. The first installment shall be paid on the first day of May, in the year following that year in which the work contemplated shall be completed, and the subsequent installments on the first day of May in each year thereafter, until the full end and completion of said time of twenty years. Third. With the exception of the changes and modifications herein provided for, the contracts of May 3rd, 1890, and July 25th, 1890, between the parties thereto, shall remain unchanged and in full force and effect.

"In witness whereof, the said parties hereto have caused their respective corporate seals to be hereunto affixed, and these presents to be subscribed

by their respective presidents, the day and year hereinabove mentioned, in presence of L. N. Polk and A. L. Hopkins, competent witnesses.

"The Board of Levee Commissioners of the Tensas Basin Levee District,
"[Seal.]                                                By H. P. Wells, President.
"The Louisiana, Arkansas and Missouri Railroad Company,
"[Seal.]                                                By Harlow M. Hoyt, President.
"Witnesses:
    "L. N. Polk.
    "A. L. Hopkins."

### Conveyance to Railroad Company.

### "Exhibit 5.

"Deed of Land Situated in Richland Parish, Louisiana, from the Board of Levee Commissioners of the Tensas Basin Levee District to the Louisiana, Arkansas and Missouri Railroad Company.

"State of Louisiana, Parish of Richland. Know all men by these presents, that I, Hansel P. Wells, acting herein for and as president of the Board of Levee Commissioners of the Tensas Basin Levee District of the State of Louisiana, and acting herein also in pursuance to a resolution passed by said Board of Commissioners at a regular meeting thereof held on the 25th day of July, A. D. 1890, and in pursuance to the terms of a contract entered into by said board on said date with the Louisiana, Arkansas and Missouri Railroad Company, a corporation duly organized under and by virtue of the laws of the state of Arkansas, have this day sold, and I do by this act sell, transfer, set over, and deliver unto said the Louisiana, Arkansas and Missouri Railroad Company, the following described tracts or parcels of land, situated in the parish of Richland, and in the state of Louisiana, belonging to said Board of Levee Commissioners, to wit: [Description omitted.] To have and to hold said tracts or parcels of land unto the said the Louisiana, Arkansas and Missouri Railroad Company, its successors and assigns, forever. The consideration for which the above sale is made is the completion on the part of said Railroad Company of the embankment in the state of Arkansas agreed to be constructed by said Railroad Company in and by a certain contract dated May 3rd, 1889. In event of the failure of the said the Louisiana, Arkansas and Missouri Railroad Company, its successors or assigns, to construct that certain portion of its roadbed or embankment in Chicot county, Arkansas, described in a certain contract made by and between the parties hereto, bearing date the 3rd day of May, 1889, according to either one of two specifications prescribed in the said contract, which said contract is of record in the office of the recorder of the parish of Richland, in which the lands aforesaid are situated, within the periods and additional to said Railroad Company, and upon the judicial determination of such failure, then and in such cases said the Louisiana, Arkansas and Missouri Railroad Company covenants, promises, and agrees to convey and return the lands herein conveyed to said Board of Levee Commissioners of the Tensas Basin Levee District, free from any incumbrances thereon placed by said Railroad Company, its successors or assigns. The transfer and conveyance of said lands is made under and in pursuance of the authority given to said board in and by the laws of the state of Louisiana, and as a means and mode of making part payment for the construction of an embankment according to certain specifications prescribed by the Board of the State Engineers of the State of Louisiana, and fully set forth in said contract of May 3rd, 1889, which said embankment, when completed, said board of state engineers has certified will aid in protecting the Tensas Basin Levee District from overflow. It is agreed and understood that said Board of Levee Commissioners only transfers such right, title, and interest in and to said land as it owns. It is agreed and understood that the deed is made subject to such release and deductions as may be made previous to the first day of March, A. D. 1891, by said Board of Levee Commissioners, under and in accordance with certain rules adopted by said board on the 17th day of December, A. D. 1889. It is further agreed and understood that said Board of Levee Commissioners, upon the final completion of said embankment, shall make a full and complete transfer to said Railroad Company of all such lands as it, said Board of Levee Commission-

ers, may at that time own in said parish of Richland, and shall then further ratify and confirm in said Railroad Company, its successors or assigns, the transfer of the within described lands in such manner and in such form as its or their counsel learned in the law may advise or require from it, save and except such of the said lands as may be released to other and former owners previous to said first day of March, A. D. 1891, under and by virtue of said rules.

"Thus done and signed, this fifteenth day of September, one thousand eight hundred and ninety, in the presence of Simon Stein and Stephen Faulk, competent witnesses who sign hereto with me, the president of said Board of Levee Commissioners.

"The Board of Levee Commissioners of the Tensas Basin Levee District,
                                "By H. P. Wells, President.
"Attest:
"Simon Stein.
"Stephen Faulk."

### Authority of the Levee Board.

The asserted authority of the Levee Board to make the foregoing contracts and conveyances of land to the Railroad Company must be found, if found at all, in Act No. 26 of 1884, Act No. 59 of 1886, and Act No. 77 of 1888, and in articles 214, 215, and 216 of the state constitution.

The constitutional provisions are as follows:

"Art. 214. The general assembly may divide the state into levee districts, and provide for the appointment or election of levee commissioners in said districts, who shall, in the method and manner to be provided by law, have supervision of the erection, repairs and maintenance of the levee in said districts; to that effect it may levy a tax not to exceed five mills on the taxable property situated within alluvial portions of said districts subject to overflow."

"Art. 215. The provisions of the above two articles cease to have effect whenever the federal government shall assume permanent control and provide ways and means for the maintenance of levees in this state. The federal government is authorized to make such geological, typographical, hydrographical and hydrometrical surveys and investigations within the state, as may be necessary to carry into effect the act of congress to provide for the appointment of a Mississippi river commission for the improvement of said river, from the head of the passes near its mouth to the headwaters, and to construct and protect such public works and improvements as may be ordered by congress under the provisions of said act."

"Art. 216. The general assembly shall have power, with the concurrence of an adjacent state or states to create levee districts composed of territory partly in this state, and partly in such adjacent state or states, and the levee commissioners for such district or districts shall possess all the powers provided by article 214 of this constitution."

These articles are amended by Act No. 112 of 1884, subsequently adopted, and which reads as follows, to wit:

"The general assembly may divide the state into levee districts and provide for the appointment or election of levee commissioners in said districts, who shall, in the method and manner to be provided by law, have supervision of the erection, repair and maintenance of the levees in said districts; to that effect the levee commissioners may levy a tax not to exceed ten mills on the property situated within the alluvial portions of said district subject to overflow; provided that in case of necessity to raise additional funds for the purpose of constructing, preserving, and repairing any levees protecting the lands of a district the rate of taxation herein limited may be increased, when the rate of such increase, and the necessity and purpose for which it is intended, shall have been submitted to a vote of the property tax payers of such district, paying taxes for himself, or in any representative capacity, whether resident or non-resident, or property situated within the alluvial portion of said district subject to overflow, and a majority of those in number and value voting at such an election shall have voted therefor."

It will hereafter be seen that, as far as this case is concerned, the amend-

ment above cited does not in the least alter the questions at issue in this case. The Tensas Basin Levee District was created by Act No. 26 of the Acts of 1884. It is unnecessary to recite the provisions of that act in extenso, because it was repealed by Act No. 59 of the Acts of 1886. We call attention, however, to the fact that the object of the creation of the board, as declared in the law, was "to order the construction of levees within the limits of the district, on such streams and such places as shall be recommended by the State Board of Engineers; to construct and maintain, out of the funds of the district, a levee across the Boeuff Cut-Off, a stream connecting the waters of Bayou Macon with the headwaters of Boeuff river, in Arkansas, provided the assent of the authorities of the state of Arkansas can be obtained," and also to join in the construction of certain levees in the state of Arkansas, named in the act, if the assent of the authorities of the state of Arkansas can be obtained, and the citizens, corporations, and other persons interested shall contribute one-half of the expense of such construction. The act of 1886 practically repealed the declared purposes of the act of 1884. Under section 17 of this last-cited act, the Levee Board is authorized "to join in with any levee district embracing the counties of Chicot and Desha, in the state of Arkansas, for mutual protection, in compliance with article 216 of the constitution." By Act No. 77 of the Acts of 1888 the foregoing was amended in the following particulars: Section 1 was amended by declaring that the purpose of the board was to raise, by taxation or otherwise, a revenue to protect the lands located therein from inundation, by constructing, maintaining, and repairing levees and other works of public improvements. Section 9 was amended by reducing the power to levy local assessments to 5 cents per acre, instead of 10 cents, and that in order to provide additional means to carry out the purposes of the act, and to furnish resources to enable the board to assist in developing, establishing, and completing, either within or without the state, a system of levees and other works of improvement designed to aid in protecting property in the Tensas Basin Levee District from all disastrous floods, all lands belonging to the state situated in said district, whether granted to it by the federal government, or acquired by it by the forfeiture for nonpayment of taxes, were "given, bargained, and donated," etc., to the Levee Board, who were invested with the power and authority "to sell, mortgage, pledge, or otherwise dispose of the same in such manner, and at such times and at such prices, as to the board shall seem proper." But that all proceeds derived therefrom shall be deposited in the state treasury, to the credit of the Tensas Levee District, and shall be drawn out only upon warrants of the president of the State Board, properly attested, as provided by this act. Section 17 of the act of 1888 remained unrepealed and unaffected by this act. That section authorized the board to join in with any levee district embracing the counties of Chicot and Desha, in the state of Arkansas, for mutual protection, in compliance with article 216 of the constitution.

### Pleadings.

Complainant attacks the agreements had with the railroad company, culminating in the attempted conveyance to the latter of the immense body of land therein described, as void, on substantially the following grounds: (1) That the agreement to convey and conveyance were conditional only, and upon the express stipulation and agreement that the failure of the Railroad Company to perform the conditions therein recited within the time stated (the last date being December 31, 1893) dissolves and avoids the contracts and conveyance; that the limit within which the Railroad Company had the right to do the work has long since expired; the Railroad Company has abandoned the work, and had done so long prior to the institution of this suit; and the grant is therefore forfeited. (2) That the performance of the condition is now impossible, because the laws of the state of Arkansas forbid the same. (3) That the alleged conveyance was void as a sale, because no price was paid, or was agreed to be paid. (4) That it was void as an exchange, because no property was given or stipulated to be given in exchange. (5) That the act was void if considered as an onerous donation, because not made pursuant to the forms of law. (6) That said board of commissioners had no power or authority to sell or dispose of said lands, except for the purposes of con-

structing or repairing levees and other works of public improvement, to protect the Tensas Basin Levee District from inundation and injury by floods of the Mississippi river, and that there was no authority to dispose of them in aid of the construction or maintenance of a railroad. (7) That the law authorizing the sale required that the proceeds should be deposited in the state treasury. From all of which it results (1) that the contracts and conveyance were ultra vires and void; and (2) if not so, have become forfeited by the failure of the grantee to perform the conditions subsequent annexed to the grant.

In an amended bill the same allegations in effect are made, and the nullity of the various agreements asserted on the ground, substantially, that the obligations assumed by the Levee Board in the several agreements were ultra vires, and prohibited by article 56 of the state constitution; that the board was without authority to contract for the construction of any sort of works in the state of Arkansas, without the consent of the authorities of that state; that the works contemplated were forbidden by the laws of Arkansas, and therefore any obligation to pay for such works was void ab initio; that the contracts with the Railroad Company contemplated the construction of a continuous line of embankment between certain designated points, and the construction and operation of a railroad between certain points; the railroad to run over the embankment as far as necessary; that the contract was an indivisible one, and utterly beyond the power of the Levee Board to make; that the statement made in the last agreement reciting that the transfer was made in consideration of the release by the Railroad Company of the obligation of the Levee Board to pay $50,000 in bonds, and to levy a certain tax, and the statement that the transfer was part payment for work already done, were false and fraudulent, in that the obligation of the Levee Board to issue bonds and levy taxes, if not ultra vires, was conditional only, and had lapsed by reason of the failure of the company to perform the conditions precedent; that the Railroad Company had never, even if the contract had been valid, earned any part of it, and the pretended release of the Levee Board from an obligation which did not exist, as a consideration for the transfer of property admitted to be worth $500,000, is fraudulent and void upon its face. The grounds of attack of the conveyance to the Levee Board may be summarized under two heads: (1) Ultra vires; (2) failure of the Railroad Company to perform the conditions and do the work which were the alleged consideration of the transfer.

The Railroad Company answers, substantially, as follows: After admitting the capacity of the complainant company, the organization of the board, etc., it admits the execution of all contracts alleged upon in the petition; claims, however, that the statement of these contracts, made by the complainant, is not fair; and therefore inserts the contracts at length in its answer. It specially denies that the Levee Board "was imperatively required by each of said acts to deposit the price or proceeds of said lands, when sold or disposed of, in the treasury of the state"; on the contrary, avers that the proceeds which were to be deposited in the treasury of the state, under the acts aforesaid, were such cash proceeds as might arise from the sale or mortgage of the lands, and has no reference to such lands that might be disposed of otherwise than by sale or mortgage. It is admitted that plaintiff and defendant, on the 3d of May, 1889, entered into a contract substantially as alleged, but that the plaintiff has failed to note an important qualification of said contract, which it sets out as follows: "If, by reason of the elements, litigations, strikes, financial panics, epidemics, or any other causes unforeseen, or beyond the control of the Railroad Company, its successors or assigns, be hindered or delayed or otherwise prevented from properly prosecuting said work, in such case, time not being the essence of this contract, the date herein fixed for the completion will not be adhered to, but credit for the time so lost shall be given and allowed to said Railroad Company, its successors or assigns, and the time so lost should be added to that herein required for the completion of the contract." The defendant admits that the Railroad Company entered into another contract on the 25th day of July, 1890, which it sets forth at length. It admits that the present Board of Commissioners

of the Tensas Basin Levee District did make and sign the conveyance mentioned and referred to in the bill of complaint, which it sets forth at length. It avers that prior to entering into the contract of October 12, 1891, the Levee Board appointed a committee composed of its members, to confer with the officers of the defendant in relation to the delay in the completion of said embankment and railroad, under the contracts of May 3, 1889, and July 25, 1890; that said committee, in writing, reported to the Levee Board the result of their investigation, and recommended the execution of said contract of October 12, 1891. It gives the report of the committee in full; avers that the said report was laid before the Tensas Basin Levee Board; that the Levee Board adopted the report, and extended the time for the completion, as set forth in the contract which follows. It denies that the time within which said embankment was to have been completed, under the terms of the contract of October 12, 1891, has expired, and avers that it is provided in and by said contract, by the third paragraph therein, that, with the exception of the changes made therein or provided for, the contracts of May 3, 1889, and July 25, 1890, between the parties thereto, are in all things confirmed, ratified, and fully approved, and so remained unchanged and in full force and effect. Substantially, the defendant alleges that the contracts were entirely within the power of the Levee Board to make; that they were supported by a lawful consideration; that the Railroad Company has diligently endeavored to carry them out, and is not in default because the delay has been prevented by financial panics, overflows, and litigation which, under the terms of the contract, "time not being of the essence," extended the term indefinitely, as long as for any of the aforesaid causes, or for reasons unforeseen or beyond the control of the Railroad Company, the work was hindered, delayed, or retarded. It claims their work has been so hindered, delayed, and retarded; that the abandonment of the work was caused by the action of the Levee Board in revoking or attempting to revoke the grant; and, in effect, that the grant means that the Railroad Company is to build whenever it may see fit to do so, and that, if it never sees fit to do so, the land belongs to it as payment for what it has already unsuccessfully attempted to accomplish.

John McClure, for appellant.

F. P. Stubbs, R. P. Williams, Chas. J. Boatner, and F. G. Hudson, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

PARDEE, Circuit Judge. The statement of this case is a somewhat lengthy matter, and, as we find in the first 27 pages of the brief submitted by Messrs. Boatner & Hudson, of counsel for the appellee, a full and fair statement, we adopt the same without reproducing it in this opinion.

It is conceded that as all the contracts involved in this suit were entered into in the state of Louisiana, and, as the lands involved are wholly situated in the same state, the law of Louisiana governs in the determination of the nature and validity of the contracts, and as to the relief which can be given by the courts. The trial judge gave no reasons for his conclusions, and his decree is limited to rescinding the contracts between the parties, rescinding and declaring void the deeds of conveyance of the lands in question, and to enjoining the Louisiana, Arkansas & Missouri Railroad Company from claiming or setting up any rights under the said contracts or deeds of conveyance.

The claims of the appellee (complainant below) are (1) that the contracts are executory only; (2) that on the part of the Board of Levee Commissioners they were ultra vires and void ab initio; (3) that

the engagements of each of the parties were prohibited by law at the date of each of the contracts; (4) if the contracts were not ultra vires and void, they had become forfeited by the failure of the grantee to perform the conditions subsequent annexed to the grant.

The contention of the appellant is, of course, the contrary of the foregoing propositions. In the assignments of error the appellant contends that the trial court erred as follows:

"First, in decreeing that the contract made on the 3d day of May, 1889, between the Board of Levee Commissioners of the Tensas Basin Levee District and the Louisiana, Arkansas and Missouri Railroad Company, and all subsequent renewals, modifications, and amendments thereof, and especially the contract between the same parties of date July 25, 1890, and that dated October 12, 1891, be, and the same are, resolved and rescinded and declared null and void; second, in not finding and decreeing for the defendant as prayed in its answer and amended answer; third, in decreeing that the defendant be enjoined from setting up or claiming any rights, privileges, benefits, or advantages arising under the contracts between the plaintiff and defendant, and the deeds of conveyance executed by the plaintiff; fourth, that the court erred in decreeing a reconveyance of said lands without stipulating that the defendant be reimbursed in the amount of such expenditures as it may have made in the performance of such contracts; fifth, that the court erred in decreeing that the contracts between the plaintiff and the defendant were ultra vires; sixth, that the court erred in not dismissing the plaintiff's bill as prayed in defendant's answer; seventh, that the court erred in not decreeing that the plaintiff had full power and authority to make the contracts which were made between the plaintiff and the defendant, set forth in the answer of defendant; eighth, the court erred in not decreeing that the lands mentioned in the conveyances were conveyed to the defendant voluntarily, as a part payment, and that, having been so conveyed, no reconveyance could be decreed; ninth, the court erred in not decreeing that the contracts between the plaintiff and the defendant were valid, binding, and subsisting contracts."

The first, second, third, sixth, and ninth of these assignments are not as specific as are required by our rules, and, in substance, amount to no more nor less than that the circuit court erred in deciding the case for the complainant, instead of for the defendant. The fifth, seventh, and eighth raise the same questions as are embraced in the appellee's contention. The fourth assignment of error presents the question whether the Railroad Company is entitled to a reimbursement of expenditures in case the reconveyance of the lands is decreed.

The counsel for appellant argues that the Tensas Basin Levee Board is one of the public functionaries of the state of Louisiana upon which only ministerial and executive duties devolve, and that, as such creature of the law, it has no standing to question the constitutionality of any law of the state conferring powers and duties upon it. So far as this contention affects the issues in this case and the right of the said board to bring this suit, and therein set up the unconstitutionality of so much of the act of July 3, 1886 (Sess. Acts, p. 96), as authorizes the Levee Board to use the donated lands for the purpose of assisting in building or completing a system of levees and other works of public improvement without the state of Louisiana, it may be noticed that, by the terms of the act of 1886, the Tensas Basin Levee Board was created a full-fledged corporation, authorized to assess taxes, collect and receive funds, and hold and administer the same; and that, by the same act, a large grant of public lands was

made to the said board to be expended discreetly in carrying out the general purposes of the act; and that, so far from being a purely ministerial and executive functionary, it was vested with large discretion, and was made and constituted a fiduciary agent. As a fiduciary, it would seem unquestionable that, if the property belonging to the trust should be appropriated and disposed of in an unlawful manner, it would be not only within its right and power, but its duty, to sue for and recover the same. The question, however, is not very material in this case, because it is not so much the constitutionality of the acts of 1886 and 1888 that is attacked by the complainant as it is the proper construction of the said acts.

It may be noticed, further, that, by article 214 of the constitution of the state of Louisiana, the general assembly is authorized to create levee districts within the state, who shall have supervision of the erection, repairs, and maintenance of the levees in said districts, and of course within the state, and that by article 216 the general assembly is given the power, with the concurrence of the adjacent state or states, to create levee districts composed of territory partly in the state, and partly in adjacent states. It is conceded that the two articles cited are limitations on the power of the legislature; and thus the grave question is presented whether the general assembly has the power to create a levee district wholly within the state, but authorized to build and construct levees outside of the state. The supreme court of the state of Louisiana, in Fisher v. Steele, 39 La. Ann. 448, 1 South. 882, have held that this identical act is constitutional; but the report does not show that this precise question was considered, and it will be observed in regard to this decision that it appears to be based upon the fact that the laws in force at the time negatively prohibited the Tensas Basin Levee Board from undertaking any works in the state of Arkansas except by the consent of and in conjunction and co-operation with the authorities of that state. The learned counsel for the appellee says:

"The state has the power to execute through any agencies which it chooses to select any power which it possesses itself. Therefore the power of the legislature to grant to the Tensas Basin Levee District all of the public lands lying within the state for the purpose of aiding in the construction, within or without the state, of levees or other works of public improvements for the protection of the alluvial lands of the district from overflow, was strictly within the constitutional powers of that body, because, among other reasons, the bulk of the land granted by the state to the Levee Board was granted to the state by the United States government for this very purpose."

As this is the standpoint of the counsel for the appellee, we are inclined to agree with them that they are not attacking the constitutionality of any of the acts of the legislature of Louisiana. It is contended by the appellee that the contracts in question and the grants of lands thereunder were ultra vires and void, because they contemplated levees and other works wholly without the levee district, and within the state of Arkansas, without the consent of the authorities of said state, and because the railway embankment contracted for was not, and could not be, a system of levees or other work of public improvement, within the meaning of section 9 of the act of 1886, as amended by the second section of the act of 1888.

The act of 1886 (section 17) provides that the Board of Levee Commissioners of the Tensas Basin Levee District shall have the right to join in with any levee district embracing the counties of Chicot and Desha, in the state of Arkansas, for mutual protection in compliance with article 216 of the constitution. This provision was left in force by the amendatory act of 1888, and it therefore, considered in connection with article 216 of the constitution to which it refers, is to be treated as a limitation upon the power of the Board of Levee Commissioners in regard to constructing levees or works of public improvement in the state of Arkansas. It is not disputed that the statutes of the state of Arkansas provide for the construction of public levees in Chicot and Desha counties, by and under the authority of the levee boards of said counties; and the case shows—in fact, it is conceded—that the levee boards of those two counties have not joined with the Tensas Basin Levee Board in the building of the embankment or levee contracted to be built by the Railroad Company, nor have the same boards given permission even to build the said embankment, but, on the contrary, have refused such permission, and, as appears by the averments in the defendant's answer, have gone so far in opposition as to contribute to the expense of litigation to prevent the construction by the Railroad Company of such embankment. The statutes of the state of Arkansas providing for the organization of railroad corporations, and regulating the construction of railroads by such corporations, prohibit the building of railroads across streams or water courses in such a manner as to permanently obstruct the stream or water course or impair its usefulness (Mansf. Dig. § 5447, par. 5), from which it follows that, although the Railroad Company may have the right to construct its roadbed in the state of Arkansas, it can neither build a roadbed under its railway charter, nor, without the consent of the authorities of Chicot and Desha counties, build an embankment, either of which will permanently interrupt the free flow of the water through all natural channels.

From these conclusions it would seem that the contract between the Tensas Basin Levee Board and the Railroad Company is not only ultra vires the power of the Levee Board, but otherwise, in its objects and purposes, is a contract impossible to perform.

Section 2 of Act No. 77 of 1888, which amends section 9 of Act No. 59 of 1886, provides as follows:

"That in order to provide additional means to carry out the purposes of this act, and to furnish resources to enable said board to assist in developing, establishing and completing, either within or without the state, a system of levees and other works of public improvement, designed to aid in protecting property in the Tensas Basin Levee District from disastrous floods, all lands now belonging, or that may hereafter belong to the state of Louisiana, and embraced within the limits of the Tensas Basin Levee District as herein constituted, shall be, and the same hereby are given, granted, bargained, donated, conveyed and delivered unto said Board of Levee Commissioners of the Tensas Basin Levee District. * * * Said Board of Levee Commissioners shall have the power and authority to sell, mortgage, pledge or otherwise dispose of said lands in such manner and at such times and for such prices as to said board shall seem proper, but all proceeds derived therefrom shall be deposited in the state treasury to the credit of the Tensas Basin Levee District, and shall be drawn out only upon the warrants of the president of said board, properly attested as provided in this act."

The above is the legislative authority for the Board of Levee Commissioners to make the conveyance of the lands in question to the Railroad Company. By the first contract entered into between the parties, the Railroad Company, for the consideration named,

—"Agrees and binds itself to construct and complete above overflow, in a thorough and workmanlike manner, under the supervision and direction of the Board of State Engineers of the State of Louisiana, and thereafter to maintain, all that certain embankment or portion of its roadbed proposed by said Railroad Company to be located in the state of Arkansas, between a point where the line of railroad projected by said company shall cross Crooked Bayou, in section ——, township —— south, range —— west, and a point on the northern terminus of what is known as the 'Bayou Macon Ridge,' in section ——, township —— south, ——, range —— west. Said embankment or roadbed, when constructed, may be forever afterwards used as its roadbed by the said Louisiana, Arkansas and Missouri Railroad Company, its successors, and assigns. The course of said embankment is to be a general northerly and southerly direction on the west of Bayou Macon."

The second contract further described the railroad and embankment to be constructed as follows:

"And to continue actively and earnestly at work until a railroad is completed and in operation, northward from Delhi, to and as far as the northern terminus of the Bayou Macon Hills, at the Boeuff Cut-Off, in Chicot county, Arkansas. And said Railroad Company further covenants, promises, and agrees so [to] complete said embankment in said contract agreed to be constructed, and entire line of railroad from Helleys, Arkansas, to Delhi, Louisiana. * * * Fourth. The Louisiana, Arkansas and Missouri Railroad Company further covenants, promises, and agrees, not only to keep said embankment across said Boeuff Cut-Off, in Chicot county, Arkansas, in repair, but also to place thereon a standard-gauge railroad, and to maintain and operate the said railroad after it is completed."

The consideration for the conveyance of the land as stated in the contract is "the completion on the part of said Railroad Company of the embankment in the state of Arkansas, agreed to be constructed by said Railroad Company in and by a certain contract dated May 3rd, 1889."

From what we have quoted, it will be seen that the object of the contracts between the parties was the construction of an embankment across Boeuff Cut-Off, lowlands in the state of Arkansas, and the building and operation of a railroad from Helleys, Ark., to Delhi, La. The authority given to the Levee Board was to assist in developing, establishing, and completing, either within or without the state, a system of levees and other works of public improvement designed to aid in protecting the property in the Tensas Basin Levee District, etc.; and this naturally brings us to the question whether the railroad and embankment, the object of the contract between the parties, were public improvements, within the terms and meaning of the law in question.

Counsel for appellee, relying upon article 56 of the constitution of Louisiana of 1879, as follows:

"The funds, credit, property or things of value of the state, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, association, or corporation, public or private; nor shall the state, or any political corporation, purchase or subscribe to the capital stock of any corporation or association whatever, or for any private enterprise. Nor shall the state, nor any political corporation thereof, assume

the liabilities of any political, municipal, parochial, private, or other corporation or association whatsoever; nor shall the state undertake to carry on the business of any such corporation or association, or become a part owner therein: provided, the state, through the general assembly, shall have power to grant the right of way through its public lands to any railroad or canal."

—contends: First, that it was beyond the power of the legislature to confer upon the Tensas Levee Board authority to contract for any work or any levees or public improvements designed to prevent the overflow of the Tensas Basin, unless the work, when completed, should be owned and controlled by the public, and not by any private party; second, that a railroad, although upon a solid embankment, is not a work of public improvement; and, third, that such railroad, although it may be in some sense a work of public improvement, is not a work of public improvement designed in fact to aid in protecting property in the Tensas Basin Levee District from overflow.

In McKenzie v. Wooley, 39 La. Ann. 944, 3 South. 128, a case much relied upon by the counsel for appellant, it was declared incidentally that a railway is a public improvement; and in many aspects this is, no doubt, true. It can hardly be denied that an embankment or levee designed to prevent the overflow of the surplus waters of the Mississippi river is a work of public improvement. The record shows with regard to the railway embankment in question that the Louisiana State Board of Engineers reported to the governor of the state as follows:

"The Tensas Basin Levee District has recently entered into an agreement with the Louisiana, Arkansas and Missouri R. R. Company to construct an embankment on the west side of Bayou Macon, and across the stream and lowlands known as 'Boeuff Cut-Off.' Such an embankment, of sufficient length and strength to confine the flood waters of its eastern side in case of breaks in the front levee along the Mississippi river, will give additional security against overflow, and protect the major part of the district, independently of the levee system along the front."

The contention that the public improvements, assisted by the Tensas Basin Levee Board, and designed to aid in protecting property in the Tensas Basin Levee District from overflow, should be owned and controlled entirely by the public as public property, is not well founded. The language of the statute forbids such a narrow construction.

There has been much argument with regard to the effect to be given to the provision of the third contract, which stipulates that:

"The Railroad Company agrees to complete the work in question on or before December 31st, 1893, unless it, its successors or assigns are, by reason of the elements, litigations, strikes, financial panics, epidemics, or any other cause unforeseen or beyond the control of said Railroad Company, hindered or delayed or otherwise prevented from properly prosecuting said work, in which case, time not being of the essence of this contract, it is understood and agreed that the dates mentioned shall be extended, and the time lost shall not be counted."

The appellant contends that, under this provision, the Railroad Company could not be put in default at the commencement of this suit, nor since, because the case shows that there have been financial panics and litigations which have hindered and delayed the Railroad

Company in prosecuting the work, for which reasons, and because it is expressly stipulated that time was not of the essence of the contract, the Railroad Company is entitled to further delay and opportunity to prosecute and complete the work before the contracts providing for the same can be avoided and the reconveyance of the lands can be demanded.    The extraordinary unilateral contract made between the Levee Board and the Railroad Company furnishes strong support to the appellant's contention; and, if the contracts can only be declared at an end because of the default of the Railroad Company, we are inclined to think that the appellee can never put the Railroad Company in default, no matter what may be the delay resulting.    The laws controlling the whole matter, however, are the Louisiana laws; and under well-recognized Louisiana law, the principles of which are declared in article 2765, Rev. Civ. Code La., to wit, "The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require," the Tensas Basin Levee Board had the right to cancel the contract and demand the reconveyance of the lands in question at any time on paying the Railroad Company for the expense and labor already incurred in executing the contract, and such damages as the nature of the case required. The institution of the present suit may be taken as a cancellation of the contract on the part of the Tensas Basin Levee Board.    If the contracts are held void because ultra vires, equity makes it the duty of the Tensas Basin Levee Board to restore all the consideration received from the Railroad Company before it can demand the reconveyance of the lands.    The Railroad Company, in its answer, avers that it has expended in good faith, in procuring the right of way on which to build said embankment, in the building of the same, in the prosecution and defense of litigation, in making surveys, and in other necessary expenses in and about the performance of said contract, a sum in excess of $100,000; but we do not find that this averment is established by the evidence, nor do we find that any specific sum, nor any sum worthy of consideration, has been expended by the Railroad Company otherwise than for and on account of and for the actual benefit of the Railroad Company itself in the preservation of its charter and franchises, and in the construction of its own roadbed in the main distinct and apart from the embankment which was to aid in preventing overflow.    Certain it is that the case does not show that the Railroad Company has done anything from the date of the first contract to the commencement of this suit which was beneficial to, or in any wise to the advantage of, the Tensas Basin Levee District, nor that the Levee Board has in possession any consideration received from the Railroad Company which equity requires to be restored.

On the whole case, we are of opinion that the contracts between the Railroad Company and the Tensas Basin Levee Board for the construction of the specific railway and embankment in the state of Arkansas, without the consent and co-operation of the Arkansas authorities, was ultra vires of the Tensas Basin Levee Board; that, because of the existing provisions in the laws of the state of

Arkansas and the opposition of the levee boards of Desha and Chicot counties of the state of Arkansas, the contracts in question, in their objects and purposes, were impossible of performance; that the Tensas Basin Levee Board had a right to, and did, cancel the said contracts; that in no aspect of the case is the Railroad Company entitled to compensation for work done and expenses incurred in carrying out the said contracts, nor for advantages which might have resulted from the performance of the same as a prerequisite to the conveyance of the lands in question; and that in all respects the decree of the circuit court appealed from should be affirmed; and it is so ordered.