WALTER BAKER & CO., Limited, v. GRAY et al.

(Circuit Court of Appeals, Eighth Circuit. November 24, 1911.)

No. 3,046.

1. TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNFAIR COMPETITION—RIGHT TO USE SURNAME.

One has no exclusive right to use his surname in doing business as against another of the same name, but, to avoid confusion or deception in the public mind, equity will enjoin use of a name where another has previously appropriated it in business, unless some addition or explanation accompanies the subsequent use, clearly distinguishing the new business from the old.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*

Right to use one's own name as trade-mark or trade-name, see notes to R. W Rogers v. Wm. Rogers Mfg. Co., 17 C. C. A. 579; Kathreiner's Mulzkaffee Fab. v. Pastor Kneipp Med. Co., 27 C. C. A. 357.]

2. TRADE-MARKS AND TRADE-NAMES (§ 73*)—RIGHT TO USE SURNAME.

The right to use one's own name as descriptive of his goods cannot be taken from him, under the doctrine of unfair trade, merely because such use would incidentally injure a predecessor in business of the same name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNFAIR COMPETITION—NOTICE TO PURCHASERS.

A dealer who has conformed to the law governing unfair competition in trade is not required to affirmatively advise an inquirer for his goods, designating them by his name, that a competitor of the same name is in business, or warn his inquirer of danger of being deceived by patronizing him.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNFAIR COMPETITION—RIGHT TO USE SURNAME.

A grocer is not guilty of unfair competition in delivering to customers "William H. Baker's Chocolate" in response to an order for "Baker's Chocolate," though for many years the latter name exclusively signified the product of Walter Baker & Co., a pioneer manufacturer, where the labels of the rival packages are strikingly dissimilar.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the District of Nebraska.

Bill by Walter Baker & Co., Limited, against Sydney C. Gray and another, partners as the Gray Mercantile Company. Decree dismissing the bill, and complainant appeals. Affirmed.

Frank F. Reed and William L. Putnam (Edward S. Rogers, James L. Putnam, A. M. Post, and August Wagner, on the brief), for appellant.

Dorr Raymond Cobb (Edgar N. Wilson and John J. Sullivan, on the brief), for appellees.

Before ADAMS and SMITH, Circuit Judges, and AMIDON, District Judge.

ADAMS, Circuit Judge. This was a bill to restrain unfair trade, which the learned trial court dismissed. Hence this appeal.

Complainant is a corporation organized and existing under the laws of the state of Massachusetts, and by divers successions and transfers claims the right, alleged to have originated as early as 1780 in one James Baker, to carry on the business of manufacturing and selling chocolate and cocoa under the trade or corporate name of "Walter Baker & Co." and particularly claims the exclusive right to the use of the word "Baker" in connection with the sale of its chocolate and cocoa. It is charged in the bill that the defendants Sydney C. Gray and Clinton C. Gray, doing business under the firm name of Gray Mercantile Company, at Columbus, in the state of Nebraska, have infringed complainant's rights by selling chocolate and cocoa manufactured by a corporation of New York known as "William H. Baker, Syracuse, Inc.," under the descriptive designation of "Baker's Chocolate" and "Baker's Cocoa."

Defendants in their answer admit complainant's exclusive right to the use of the name "Walter Baker" in any of the combinations specified by it, but deny it has any exclusive right to the use of the name "Baker." They admit they are selling the product of the Syracuse Baker; and allege that for some years prior to 1899 a man by the name of William H. Baker had been engaged in the wholesale grocery business in Syracuse, and in that year determined to embark upon the business of manufacturing and selling chocolate and cocoa; that, with a view to accommodating his business to the rights of Walter

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Baker & Co. of which he had full information, he devised and adopted a label to be placed upon the packages of his product which so fairly distinguished and differentiated them from the packages of Walter Baker & Co. that no confusion could arise, and that upon a conference between the two concerns the label so devised and adopted by the Syracuse Baker was approved by the Massachusetts corporation; that William H. Baker and his subsequently formed corporation of the same name, soon after commenced to use the label so adopted and approved, expended large sums of money in the development of their trade under it, and continued the use of that label without objection by Walter Baker & Co. until about the time this suit was instituted in 1904.

By reference to the cases of Walter Baker & Co. v. Baker (C. C.) 77 Fed. 181, Walter Baker & Co. v. Sanders, 26 C. C. A. 220, 80 Fed. 889, Baker v. Baker, 53 C. C. A. 157, 115 Fed. 297, and Walter Baker & Co. v. Slack, 65 C. C. A. 138, 130 Fed. 514, which related to a controversy between the complainant in this case and one W. H. Baker of Winchester, Va. (and not William H. Baker of Syracuse, whose rights are now involved), the genesis and development of complainant's business as well as valuable contributions to the law governing the rights and limitations upon the rights of individuals to make use of their own patronymic as a trade-name can be found; and, in view of the facts there disclosed, little need be said now concerning the general facts of the case. Suffice it to say that complainant's label on the front of its package is and for a long time has been of a distinctive yellow color upon a dark blue background, having on its front side in large black letters: "BAKER'S CHOCOLATE—CELE-BRATED AS A NUTRITIVE, SALUTARY AND DELICIOUS BEVERAGE FOR MORE THAN A CENTURY."

This is followed by 10 lines of descriptive matter in small type, and then by the words in large type: "MADE BY WALTER BAKER & CO., LIMITED, DORCHESTER, MASS."

On the reverse side of the package appears in lavender color an attractive picture of a waitress with a white cap and apron, carrying in her outstretched hands a tray with two cups on it. Above the picture are the words, "La Belle Chocolatiere," and below it the words, "Walter Baker & Co., Limited, Registered in U. S. Patent Office."

The label on defendants' package being that of the Syracuse Baker upon whose rights they stand is of white color over a dark blue background. On it, in large green letters, appears this legend:

"JUSTICE        Brand        CHOCOLATE
Premium No. 1.
Highest Grade Made in the World."

Then follow three lines only, of directions in small type; afterwards in bold large type the following: "WILLIAM H. BAKER, SYRACUSE, INC."

On the reverse side of their package is a representation of the Goddess of Justice in scarlet color holding aloft in one hand the scales of justice and in the other the conventional sword. Over the head

is inscribed in large and prominent letters the words "JUSTICE BRAND," and beneath in like large and prominent letters are the words, "COCOA AND CHOCOLATE, WILLIAM H. BAKER, SYRACUSE, INC."

These labels are strikingly dissimilar, and each prominently and unevasively discloses the manufacturer of its contents. In the spirit of fairness which seemed to actuate both parties in the year 1899 and for several years thereafter, the labels were regarded and treated as quite sufficient to prevent any deception or confusion.

In the trial before the Circuit Court no claim was made that the Syracuse label failed to properly distinguish between the product of complainant and the Syracuse Baker, and the case was there argued and decided on the assumption that the labels on defendants' goods (which were the same as those of the Syracuse Baker from whom they purchased them) were undeceptive and lawful. There could not well be, neither has there been, any serious contention that defendants in handling the Syracuse Baker's product have been guilty of unfair competition by simulating complainant's labels or advertising matter. This kind of deception, being that which commonly characterizes unfair competition in trade, is conspicuously absent in this case.

Practically the only contention here is that defendants, who keep the product of both the Bakers for sale in their grocery at Columbus, have been guilty of unfair competition in trade because they have not on an inquiry by customers for "Baker's Chocolate," without more, handed out at once complainant's packages or have not affirmatively called attention to the fact that there were two kinds of Baker's chocolate, one Walter Baker's and the other William H. Baker's, and asked inquirers which they desired. This contention must be considered in the light of the following facts which are disclosed in the record:

The complainant under the name of "Walter Baker & Co." and its predecessors had for a long time and until about the year 1895, when one W. H. Baker of Virginia and later William H. Baker of Syracuse, engaged in the chocolate business, enjoyed a practical monopoly of the name of "Baker" in connection with that business. Prior to this date its product had been commonly known and referred to as "Baker's" chocolate or cocoa, and even up to the time the testimony was taken in this case in 1907 the word "Baker" used alone, in common speech, concerning chocolate or cocoa, had generally denoted the product of the complainant company. But the defendants the Gray Mercantile Company prior to the institution of this suit had established a large demand in Columbus for the product of William H. Baker of Syracuse, which had there become so well known for its excellence that many purchased it in preference to the Walter Baker product. There is considerable evidence to the effect that, since William H. Baker of Syracuse entered into the business, a growing disposition has arisen to discriminate between the Bakers, when calling for chocolate. Customers desiring complainant's goods are beginning to call for "Walter Baker's." Even the complainant company in its advertisements in recent years has recognized the necessity for this

discrimination and has emphasized it by urging purchasers to specify "Walter Baker's" goods in making their orders. Not only so, but in these later years complainant's product has become very generally known and ordered by purchasers by distinguishing names other than "Baker's," as, for example, the "Yellow Label," the "Chocolate Girl," and frequently as "Baker's Yellow Label," or "Baker's Chocolate Girl."

The retail selling price of the products of both Bakers at Columbus was the same; but defendants, being able to purchase the Syracuse Baker's chocolate at a less price than the Walter Baker's, made a little greater profit by selling the former to its customers rather than the latter; and, when Baker's chocolate without further specification or other description was asked for, they generally handed out the William H. Baker package. There having been an extensive demand for both these products in and about Columbus, users became entirely familiar with the dress of the different packages, and recognized complainant's as the "Yellow Label" or the "Chocolate Girl," and often called for them by either of those names. These and other distinguishing marks upon complainant's packages were so well known that purchasers of ordinary perception could not have failed to quickly discover that some other brand of chocolate or cocoa had been palmed off for Walter Baker's if such had been attempted. If a William H. Baker package bearing its peculiar and impressive labels had ever been offered to a customer calling for or wanting a Walter Baker package, the latter's sense of sight would have immediately come to his assistance and it would have been rejected. In the nature of things, therefore, the public has not been deceived; neither has complainant suffered by any surreptitious palming off of defendants' goods in lieu of its own.

Such being the facts, was it the duty of the defendants upon demand by customers for "Baker's" chocolate, without further specifying which kind, to hand out *Walter* Baker's packages, or explain to customers that there were two Bakers' chocolate and ask which they desired? Or could the defendants who were carrying the goods of both Bakers, on such a demand by a customer, hand out to him the one, by the sale of which they could make the most money, with the hope the customer would accept it and be satisfied?

[1] There are some propositions which in the present state of the law on the subject of unfair competition must be regarded as firmly established. One is that no person can acquire or transmit to his successors in interest any exclusive right to the use of his own surname as against the right of others of the same name to use theirs honestly and legitimately in the prosecution of any business they may decide to engage in. Howe Scales Co. v. Wyckoff, Seamans, etc., Co., 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972, and cases cited. If, however, confusion would result or the public be deceived or unwarrantable injury be occasioned by the subsequent adoption and use of a name once lawfully appropriated by a predecessor in business, equity will restrain such subsequent use unless some addition or explanation accompanies the use which indicates clearly that the busi-

ness or product of the later comer is different from that of the original one. Herring, etc., Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616, and cases cited. "Sic utere tuo ut alienum non lædas" is a wholesome maxim of the law as well as of morals. The application of these principles to the facts of the present case will control its decision.

[4] William H. Baker of Syracuse, as already seen, conformed in respect of his labels and advertisements fully to the requirements of the law just referred to; and the defendants in handling his goods encroached in no manner upon the labels, advertising cuts, displays, or other devices which had characterized complainant's packages. Such being the case, they had the undoubted right to push their business with all legitimate argument and persuasion. When purchasers entered their store and called for Walter Baker's chocolate, they had the right to try and convince them by all honorable means that William H. Baker's product was better than the Walter Baker's product, and to persuade them, if possible, to take it rather than the article they called for. No one would contend this was not fair competition.

In view of the uncontradicted testimony that the prominent yellow label, the striking effigy of the chocolate girl, and the display of the name of "Walter Baker & Co., Limited," so distinguished and characterized complainant's packages that all persons knew them by those tokens or some of them, it seems perfectly obvious that an inquirer for its chocolate would, at once, on being offered a package of the "Justice Brand" manufactured by William H. Baker with its label so strikingly different from those characterizing the Walter Baker product, refuse to accept or keep it, unless they were willing to take it on its own merits. The delivery of a package of the "Justice Brand" on a call for complainant's chocolate would be in effect a proposition to the purchaser to accept that in lieu of what he asked for. In reality, therefore, we fail to see how the tender of a William H. Baker package on a call for complainant's chocolate could deceive any purchaser. Certainly an attempt to deceive in that way would be so palpable as to signally fail of its purpose. A purchaser of ordinary prudence or even the most unwary could not be deceived by it.

The Supreme Court in McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828, speaking by Mr. Justice Clifford, said:

"A court of equity will not interfere when ordinary attention by the purchaser of an article would enable him at once to discriminate one from the other."

And in Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144, speaking by Mr. Justice Jackson, said:

"Even in the case of a valid trade-mark the similarity of brand must be such as to mislead the ordinary observer."

But let it be conceded for the moment that complainant's packages are at the present time generally known and recognized by the trade under the name of "Baker's" chocolate or cocoa, and that there are no other names or tokens by which they are known, we are of opinion that the demands of fair and honest competition did not require the

defendants to exercise the solicitude in behalf of their competitor contended for. If the complainant and its predecessors permitted their goods to become known to the trade as "Baker's" without further identification, they did it subject to the possibility that any other person of that name might enter the same business and might properly enough desire his own product to be known by his own name.

Defendants' goods are as accurately described by the word "Baker's" as complainant's are, and they have a natural and perfect right to call them so and a natural and pardonable ambition to induce others to call them by that name.

Because of the fact, however, that another man by the name of Baker had preceded them in the same business, in order to insure fair competition and prevent the perpetration of fraud upon the public, the law, as already pointed out, imposed upon defendants the obligation of so marking and describing their product as to plainly distinguish it from their predecessor's. This, as we have already seen, was done by them to the fullest possible requirement.

[2, 3] If, in addition to this, a merchant in order to escape the charge of fraud must explain to every customer calling for his goods by its natural descriptive and colloquial name the difference between them and those of a competitor entitled to use the same descriptive name, or if a merchant must warn every customer that he is liable to be defrauded by trading with his house, he would in a large degree be deprived of his natural and conceded right to trade in his own name. He would be required to advertise and extol his rival's goods in an attempt to sell his own. We cannot give our assent to the proposition that would impose upon a second comer such an extraordinary degree of care to protect a rival of the same name. The authorities, as we view them, impose upon him this duty and no more. He must by means of his packages, the color, display, and legends upon them, or in some other effective way so plainly distinguish his own product from that of his predecessor that purchasers in the exercise of reasonable care cannot be 'deceived in respect to it. In this way the undoubted right to use one's own name in business is secured and preserved, and the duty to so use it as not to deceive the public or unnecessarily injure a business competitor of the same name is enforced. The right and the duty thus become reconciled so far as is consistent with their separate existence in one person.

In Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 187, 16 Sup. Ct. 1002, 1009, 41 L. Ed. 118, it is said:

"Every one has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right are subjected is damnum absque injuria."

In Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847, Coats sought to enjoin the defendant from alleged unlawful and unfair competition in business by using certain marks and symbols upon the spools of thread in resemblance of complainant's marks and symbols. The Supreme Court, having held that the defendants

had the right to use certain labels which were alleged to be infringements of complainant's rights, said:

"They [the defendants] were only bound to take such care as the use of such devices, and the limited space in which they were used would allow. * * * Having done this, we think they are relieved from further responsibility. If the purchaser of such thread desires a particular make, he should either call for such, * * * or should examine himself the lettering upon the spools. He is chargeable with knowledge of the fact that any manufacturer of six-cord thread has a right to use a black and gold label, and is bound to examine such label with sufficient care to ascertain the name of the manufacturer."

See, also, to the same effect, the cases of McLean v. Fleming and Columbia Mill Co. v. Alcorn, supra.

In Centaur Co. v. Marshall, 38 C. C. A. 413, 97 Fed. 785, this court in a case of unfair competition where both parties had a right to use a common name, "Castoria," in the manufacture and sale of their product, said:

"Every one has the undoubted right to sell his own goods or goods of his own manufacture, as such, however much such sales may damage or injure the business of his competitors. * * * Every purchaser is charged with knowledge of the fact that any one may make and sell 'Castoria,' and, if he seeks that made by one manufacturer rather than that prepared by another, it is his duty to examine the wrapper with such a degree of care as would ordinarily ascertain who the manufacturer of the article which he purchases is. The law imposes no duty upon the appellees to see to it that the careless and indifferent know that the Castoria which they buy is made by the appellant if they so dress their product that one who seeks to ascertain whose manufacture it is can readily learn by a reasonable examination of their wrappers, whether it is made by the appellant or by themselves."

In Allen B. Wrisley Co. v. Iowa Soap Co., 122 Fed. 796, 59 C. C. A. 54, this court in a similar case said:

"Every manufacturer and vendor has the undoubted right to sell the goods he makes or owns to the public, to his own customers, and to the customers of his competitors if he can, at lower prices and on better terms than those furnished by them, and by these and by all fair means to divert their trade to himself, even though his activity and enterprise may destroy the business of his rivals. * * * His competitor has no better right to a monopoly of the trade of the careless and indifferent than he has, and any rule of law which would insure it to either would foster a competition as unfair and unjust as that promoted by the sale of the goods of one manufacturer as those of another. One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the sources of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition."

Our conclusion is that defendants' right to offer their goods to the trade as "Baker's" goods is equal to that of complainant's right to so offer its goods, and that defendants, having fully complied with the law obligating them to so dress their goods as to prevent confusion and enable purchasers when exercising reasonable care to distinguish between them and the goods of others of the same name, have done their full duty either to the public or to the complainant.

By heeding the maxim caveat emptor, the public will be protected;

and complainant, for reasons already stated, will not suffer any legal injury. The decree of the Circuit Court dismissing the bill is affirmed.

SMITH, Circuit Judge (specially concurring). I cannot wholly concur in the foregoing opinion. Rule 11 of this court[1] provides that the appellant shall file with the clerk of the court below an assignment of errors which shall set out separately and particularly each error asserted and intended to be urged, and errors not assigned according to this rule will be disregarded, but the court at its option may notice a plain error not assigned. Of course, the last clause is wholly immaterial here as the majority hold there was not only no plain error, but no substantial error. The only assignment of error in this case is:

"That said court erred in dismissing said complainant's bill with costs to the complainant, in denying to the complainant an injunction in the term as prayed for in said complainant's bill of complaint, and in refusing to direct an accounting of profits and damages."

In my judgment this is a wholly insufficient assignment of errors. Stevens v. Gladding, 19 How. 64, 15 L. Ed. 569; Oswego Township v. Travelers' Insurance Co., 70 Fed. 225, 17 C. C. A. 77; The Myrtie M. Ross, 160 Fed. 19, 87 C. C. A. 175; United States v. Stone & Downer Co., 175 Fed. 33, 99 C. C. A. 49; Deering v. Kelly, 103 Fed. 261, 43 C. C. A. 225; Louisiana Co. v. Levee Commissioners, 87 Fed. 594, 31 C. C. A. 121; United States v. Ferguson, 78 Fed. 103, 24 C. C. A. 1; Doe v. Waterloo Min. Co., 70 Fed. 455, 17 C. C. A. 190; Smith v. Hopkins, 120 Fed. 921, 57 C. C. A. 193.

Rule 24 (188 Fed. xvi) provides the brief shall contain a specification of the errors relied upon, and in cases brought up by appeal the specification shall state as particularly as may be in what the decree is alleged to be erroneous. There is a total absence of any pretense of compliance with this rule, and the case can properly be affirmed, and the appeal dismissed for this reason. City of Lincoln v. Street Light Company, 59 Fed. 756, 8 C. C. A. 253; Woodmen of the World v. Jackson, 97 Fed. 382, 38 C. C. A. 208; Western Assur. Co. v. Polk, 104 Fed. 649, 44 C. C. A. 104.

It is suggested on behalf of appellant that the assignment of errors is as specific as possible under the circumstances, but in this I do not concur. It must be borne in mind that under rule 11 each error must be set out separately. The bill prayed for an injunction restraining the defendants from advertising, selling, or causing to be sold any cocoa or chocolate other than that made by complainant under the names of "Baker's Cocoa" or "Baker's Chocolate," or in response to requests for "Baker's Cocoa" or "Baker's Chocolate," and also from using the word "Baker," "Baker's" or "Bakers,'" on packages, boxes, labels, show cards, or in advertisements or orally or in any manner in connection with powdered cocoa or chocolate other than that made by complainant, and from referring to any cocoa or chocolate other than that made by complainant either orally or in writing, in advertisements, sales, or offers for sale in any way which will lead consumers or the public to believe that the chocolate or cocoa so referred to is

Baker's Chocolate or Baker's Cocoa, or a variety of Baker's Chocolate or Baker's Cocoa, and for an accounting and for compensation.

The acts sought to be enjoined are very numerous, and as to many of them it was not even seriously contended at the hearing that complainants were entitled to an injunction. Request for an accounting and compensation was clearly incident to and dependent upon the granting of the whole or some part of the injunctive relief sought. Generally speaking, where a bill seeks an injunction and an accounting, it is certainly not a sufficient assignment of errors to charge that the court erred in dismissing complainant's bill with costs. When a bill seeks two separate classes of relief, it cannot be said that errors are set out separately by an assignment that the court erred in dismissing the°bill, and, when a bill seeks an injunction against a dozen distinct acts, no error can be said to be pointed out by an assignment that the court erred in denying an injunction in the term prayed. Even if the assignment of errors was sufficient, and I think it clearly was not, still not even a suggestion of excuse is made for the total failure of the brief to contain any specification of errors as required by rule 24.

I concur quite generally in the facts found and the law laid down in the majority opinion. There are some matters not set forth in the opinion, but which have been carefully considered by the entire court that the majority do not regard as controlling, but which to me seem to entitle the complainant to a portion of the injunctive relief sought. For the reasons indicated, I concur in the order of affirmance, and, as all agree that the case should be affirmed, I do not deem it necessary to set forth at length why I cannot wholly concur in the opinion of the majority. I do not under the circumstances feel that it would be profitable to make an additional review of the evidence and the authorities applicable thereto.