## C. H. Arnold & Co. *v.* United States (No. 3551)[1]

United States Court of Customs and Patent Appeals, February 20, 1933

*Barnes, Richardson & Halstead* (*Samuel M. Richardson* and *Kenneth F. Simpson* of counsel) for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Hugo P. Geisler* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument December 6, 1932, by Mr. Richardson and Mr. Folks]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Bland, Judge, delivered the opinion of the court:

This appeal involves the proper dutiable classification of an importation consisting of what is described as "Sauce Bercy," "Sauce Newberg," "Sauce Bordelaise," and "Sherry Flavoring." It is conceded that the importation consists of sherry or other low-grade wines, each containing alcohol in less quantity than 20 per centum

---

[1] T. D. 46259.

and also roughly 1.78 per centum of salt. The chemist's report set out in the record is as follows:

CHEMIST'S REPORT

|  | Specific gravity @ 223 | Absolute alcohol by volume | Per cent salt per weight | Invert sugar | Total solids | Grams tannic acid |
|---|---|---|---|---|---|---|
|  |  | Per cent |  | Per cent | Grams per 100 cc. | Per 100 cc. |
| Pitmans | 0.999 | 19.85 | 1.64 | 1.48 | 5.35 | 0.02 |
| Mestrezat | 1.003 | 14.30 | 1.63 | 1.18 | 5.23 | .04 |
| Crouzat Bercy | 1.005 | 12.00 | 1.83 | .51 | 5.24 | .04 |
| Crouzat Bordelaise | 1.003 | 10.80 | 1.77 | .28 | 4.71 | .18 |
| Crouzat Newburg | 1.001 | 16.40 | 1.89 | .71 | 5.40 | .03 |

It is conceded that the merchandise, or at least a portion of it, is substantially identical with the importation involved in the case of *United States* v. *Neuman & Schwiers Co. (Inc.),* 18 C. C. P. A. (Customs) 1, T. D. 43971; that by the addition of salt before importation it was made unfit for beverage purposes and is used exclusively in kitchens of large hotels and in restaurants as a flavoring in the preparation and making of sauces for turtle soup, Sauce Newberg, lobster, chicken á-la-king, and various other dishes. One witness testified that it contained 1 per centum spices and that the spices and the salt rendered it unpalatable for beverage purposes.

The collector classified the merchandise for duty under paragraph 24 of the Tariff Act of 1930, which paragraph contains the provision—

and all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less, 20 cents per pound and 25 per centum ad valorem; * * *.

The importer protested the classification of the importation, relying on the sole claim that it was dutiable under paragraph 1558 as a nonenumerated manufactured article not specially provided for at 20 per centum ad valorem.

The United States Customs Court overruled the protest without approving the collector's classification and held that the merchandise was dutiable by similitude under paragraph 804 as still wines.

The importer has appealed from the decision of the court below and here challenges the correctness of the action of the collector and the findings of the court and urges that the testimony and competent lexicographical authorities support its position that the importation is not an alcoholic compound and that it should not be held to be dutiable as a still wine, either directly or by similitude.

The material portions of the three competing paragraphs of the Tariff Act of 1930 read as follows:

PAR. 24. * * * and all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less, 20 cents per pound and 25 per centum ad valorem; * * *.

PAR. 804. Still wines, including ginger wine or ginger cordial, vermuth, and rice wine or sake, and similar beverages not specially provided for, $1.25 per gallon: *Provided*, That any of the foregoing articles specified in this paragraph when imported containing more than 24 per centum of alcohol shall be classed as spirits and pay duty accordingly.

PAR. 1558. * * * and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

We do not think the importation can be classified under the provision "still wines, * * * and similar beverages" in paragraph 804, *supra*, either directly or by similitude. The court below found that it was classifiable under said paragraph 804 by similitude because the only use to which the importation was placed was "one of the ancient and important uses of wine for seasoning food in the kitchen." Sherry wine is a well-known beverage, and we can not agree that its use as a cooking ingredient justifies the application of the similitude paragraph of the tariff act so as to control the classification of the merchandise at bar.

In *Porges & Levy* v. *United States*, 15 Ct. Cust. Appls. 298, T. D. 42474, the merchandise involved consisted of port wine to which was added, prior to exportation from Spain, 16 grains of potassium nitrate to each fluid ounce of wine. The importer by way of protest claimed it to be dutiable as "still wines * * * and similar beverages" under paragraph 804 of the Tariff Act of 1922, directly or by similitude. The trial court held that said paragraph 804 was obviously intended to cover only such merchandise as was fit for use as beverages and that since the merchandise was denatured wine, unfit for human consumption, it did not come within the provisions of the paragraph. It was there held that the merchandise was a chemical mixture under paragraph 24. On appeal to this court we held that paragraph 804 of the Tariff Act of 1922, which is identical with paragraph 804 of the Tariff Act of 1930, was restricted to such articles as were beverages and that the same was not dutiable thereunder by similitude. We further held that the merchandise was dutiable under paragraph 24, which provided for chemical mixtures and alcoholic compounds not specially provided for, and affirmed the judgment of the trial court.

Since this court definitely held in the *Porges & Levy* case, *supra*, that paragraph 804 of the Tariff Act of 1922 was restricted to such articles as were beverages, it seems that our decision in that case is controlling of our decision on the same phase of this case, and that, since the paragraph under consideration is so restricted, the instant importation, not being a beverage, can not find dutiable classification thereunder by similitude. Furthermore, it seems clear to us that if similarity of use were to be considered it should not be overlooked that the imported merchandise at bar is more than wine when it comes into this country, and its use as a flavoring in the preparation and making of various

sauces is not the use of wine but is the use of a compound consisting in part of wine.

We think the merchandise as imported responds to the term—

all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less.

Some of the witnesses expressed the view that an alcoholic compound must be one in which there is a chemical reaction between the compounded ingredients, and that an alcoholic compound must be a chemical compound. Congress has distinguished between various kinds of compounds, and we think our decision in *United States* v. *Neuman & Schwiers Co. (Inc.)*, *supra*, and other cases hereinafter referred to sustain the proposition that the mixture herein involved is an alcoholic compound.

The *Neuman & Schwiers Co.* case, *supra*, as heretofore stated, involved the classification of goods substantially identical with those at bar. The collector classified the merchandise as "sauces of all kinds" under the provision of paragraph 773 of the Tariff Act of 1922. The importer there, as here, claimed the merchandise dutiable as a non-enumerated manufactured article. In that case it was claimed dutiable under paragraph 1459, Tariff Act of 1922, which is the predecessor paragraph of paragraph 1558 of the present act, under which the importer claims classification in the case at bar. In the argument before this court the Government for the first time contended that the importation was an alcoholic compound and dutiable under paragraph 24. We agreed with the holding of the court below that this article was not a sauce but an ingredient for sauces. We declined to hold definitely that the merchandise was or was not dutiable as an alcoholic compound under said paragraph 24 inasmuch as the evidence was unsatisfactory as to the alcoholic content of the importation.

The record in the case at bar supplies the lack of proof to which attention was called in the *Neuman & Schwiers Co.* case, *supra*. We do not think the context of the paragraph or the common meaning of the term "alcoholic compound" justifies the conclusion that for an article to constitute such a compound there must be a chemical admixture of the elements which comprise the same. The testimony of the witnesses in the case is conflicting as to the common meaning of the term "compound." The court is frequently helped by, and often relies on, the testimony of competent witnesses as to the common meaning of a term, but clearly the courts are not obligated to accept such testimony. *United States* v. *Moscini*, 19 C. C. P. A. (Customs) 144, T. D. 45261. Some of the testimony is to the effect that there must be a chemical reaction between the compounded ingredients in order to constitute an alcoholic compound while other witnesses testified that an alcoholic compound might be a physical compound and consist only of an admixture of alcohol, salt, and so forth. We

see nothing about the term "alcoholic compound," or the remainder of the paragraph in which the term is found, that would indicate any congressional intent to restrict the meaning of the term as is contended for by the importer herein.

In *Birn & Wachenheim* v. *Du Pont Cellophane Co.*, 17 C. C. P. A. (Customs) 122, T. D. 43454, we were called upon to determine the meaning of the term "compounds" as found in paragraph 31 of the Tariff Act of 1922 in the phrase "compounds of  *  *  *  cellulose  *  *  *  in  *  *  *  sheets." We adopted and quoted from the Century Dictionary and Cyclopedia the following definitions of the term "compound":

Compound, a. and n. II n. 1. Some thing produced by combining two or more ingredients, parts, or elements; a combination of parts or principles forming a whole.

Compound, v. 1. trans. 3. To form by uniting or mixing two or more elements or materials.

4. To make; constitute; form; establish.

We there cited and approved the case of *United States* v. *Stone & Downer Co.*, 175 Fed. 33, where the term "alcoholic compounds" was under consideration by the court. The Circuit Court of Appeals there said:

Of course, the word "compound," under some circumstances, has a limited application. Pharmacists ordinarily apply it to a mere mixing of different substances, especially when comminuted with the mortar and pestle. Chemists sometimes, though not ordinarily, use it when two substances are chemically united so as to make a new substance; but, according to the lexicographers, and according to well-known understanding, it covers any "union or mixture of elements, ingredients, or parts." (Webster's International Dictionary (1904), the word "compound.")

See also *Smith* v. *Rheinstrom*, 65 Fed. 984, and *Mackie* v. *Erhardt*, 77 Fed. 610.

In *Birn & Wachenheim* v. *Du Pont Cellophane Co.*, *supra*, this court said:

In our view it makes no difference by what process the compounding was brought about or at what time it took place, if, in fact, the product is the intentional result of the admixture of more than one ingredient which gave the material its essential characteristics.

In appellant's original brief it was suggested that if the merchandise at bar was a compound of any character it was a compound of *wine* and salt and not a compound of *alcohol* and salt. At the request of this court the appellant and the Government filed supplemental briefs on this phase of the case. While appellant's brief shows that an exhaustive research of the authorities has been made it contains the citation of no authority which decides the question which confronts us here. As far as we have been able to ascertain this is the first

time this exact question has been presented to and considered by a court.

Appellant earnestly argues in its supplemental brief that the mere fact that the compound at bar contains alcohol is not sufficient to warrant its being called an alcoholic compound and that to constitute an alcoholic compound it is necessary that "free alcohol" enter into the same. This line of reasoning would seem to imply that if it had been certain gins (which are in part of free alcohol) and salt it would not constitute an alcoholic compound because it was a compound of gin and salt rather than a compound of alcohol and salt. A similar contention might be made to the effect that if fortified sherry wine (which contains added alcohol) and salt were compounded it would not be an alcoholic compound because it would be wine and salt and not alcohol and salt. Appellant in its supplemental brief does not go this far but seems to distinguish between compounds containing fortified wine or gin and compounds containing unfortified wine. Appellant urges that for the purposes of this case we must treat the alcohol in the wine as not having been added to the wine.

The statement that a wine and salt compound is not an alcoholic compound, when presented as appellant's able counsel has presented it here, has sufficient appearance of soundness to require careful consideration by the court. At first blush the statement has an appearance of soundness, but on closer examination it becomes apparent that it embodies a subtle fallacy. A true legal postulate must find support either in logic or authority, or both. Appellant's contention, as we view it, is based upon neither.

It would be anomalous to hold a mixture of salt and unfortified wine, containing a given percentage of alcohol, to be a nonenumerated article and also to hold a mixture of salt and a fortified wine, containing the same percentage of alcohol, to be an alcoholic compound. Such an illogical and arbitrary holding would make the classification for customs purposes of merchandise like that at bar almost impossible if not completely so. In the instant case two of the witnesses seemed to be of the impression that the compound at bar, or at least the merchandise represented by two of the exhibits, contained free or added alcohol, yet it is obvious from the testimony that owing to the nature of the compounds they could not be certain of this fact. For instance, a portion of the testimony of Edward R. Miller, chemist at the United States appraiser's stores, is as follows:

X Q. So far as the alcohol is concerned, you know it is there?—A. I know it is there in two cases. I suspect it was added.

X Q. What gives rise to that suspicion?—A. A knowledge of the alcoholic content as reported in the literature, chemical literature. Very seldom exceeds 14 per cent alcohol by volume; these two cases I have mentioned exceed——

Herbert W. Eckweiler, also a chemist at the appraiser's stores, testified as follows:

X Q. It would be a mixture of salt, water, and alcohol; is that right?—A. Yes, sir.

X Q. And really that is what you found this merchandise to be from your analysis, a mixture of salt, water, alcohol and possibly some other ingredients?—A. I would say that question is partly correct, but I found it to be wine, salt, and some of the wine had added alcohol.

We are of. the opinion that the term "alcoholic compound" found in paragraph 24, *supra*, means a compound or mixture of two or more ingredients, which compound contains alcohol and which alcohol is present when the compound is completed. It has been suggested that if the presence of the alcohol alone determined its classification a simple or mechanical compound might be classified as an alcoholic compound on account of the inadvertent presence of alcohol which was produced by fermentation during transportation to this country. Such a mixture would not be an alcoholic compound for the reason that alcohol, whether free or otherwise, was not compounded with any other ingredient.

We conclude that the classification of the collector was correct and that the United States Customs Court properly overruled the protest, and its judgment is *affirmed*.